

# NUMBER 13-07-144-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

### EX PARTE: JAMES CARL CAMP

### On appeal from the County Court at Law of
### San Patricio County, Texas.

## MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Vela
### Memorandum Opinion by Justice Yañez

After a bench trial, appellant, James Carl Camp, was convicted of assault.[1] Appellant was given a one-year term of imprisonment, probated for one year, and an $800 fine. Appellant thereafter filed an application for a writ of habeas corpus, alleging there was new evidence that "undermine[d] the guilty verdict and subsequent Judgment." After a hearing, the trial court entered an order denying appellant's application. In a single issue, appellant challenges the denial of his application for writ of habeas corpus. We affirm.

---

[1] *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon 2003).

**Background**

*1. Appellant's Trial for Assault*

The trial judge who denied appellant's writ also presided over his trial for assault. The victim of the assault was appellant's wife (hereinafter "J.C."). At trial, J.C.'s testimony provided the following facts: (1) on February 2, 2005, J.C. and appellant were arguing at their residence; (2) during this argument, appellant spit in J.C.'s face and she, in turn, spit in his face; (3) when J.C. spit, appellant struck her nose with the palm of his right hand, causing her to have a "bloody nose and a busted lip"; (4) J.C. called 911 a few minutes later; and (5) appellant left the residence prior to the arrival of law enforcement.

Three police officers from the Portland Police Department also testified. According to their testimony, they arrived at the Camps' residence, where they found J.C. in an emotional state, with injuries to her face as described by her testimony. One officer testified that after visiting the Camps' residence, he returned to the police station where he found appellant sitting inside. According to the officer: "When I walked in I asked him if he was Mr. Camp. He said yes. He stood up, said he knew he was in trouble. Then he actually turned around and put his hands behind his back." Appellant was taken into custody at that time.

Appellant testified that his hand accidentally contacted J.C.'s nose as he attempted to block her spit.

*2. Appellant's Habeas Corpus Hearing*

At the habeas corpus hearing, appellant submitted a letter that J.C. had sent to the trial judge. The letter stated:

2

In the matter of alleged domestic violence assault charges filed on James Carl Camp. The events that took place that evening were exaggerated. During our 6 1/2 year marriage there was never any violence and I know that without a doubt Jim would never hurt me and did not mean to that evening. We were in middle [sic] of a messy divorce proceeding and a custody fight for our children. I do not feel in any way threatened by Jim or feel that my children are in harms way. Please reconsider your verdict and the [sic] do not convict James C. Camp on this matter.

J.C. testified at the hearing. She denied, contrary to the claims of appellant's counsel, that the letter represented a recantation of the testimony she provided at appellant's trial for assault. J.C. stated that the purpose of the letter was to inform the trial judge that appellant had never physically harmed her prior to the incident in question; it was not her intent to give the impression that she definitively knew that appellant did not mean to strike her. J.C. further testified that she believes appellant's conviction should stand, and that she only wrote the letter because she stood to gain an additional $300 a month from appellant in child support if his conviction was dismissed or he was acquitted.

## Standard of Review

The court of criminal appeals set out the applicable standard of review in great detail in *Ex parte Brown*:

> This Court now recognizes two types of "innocence" claims. The first—a *Herrera* claim—is a substantive claim in which the person asserts a "bare claim of innocence" based solely on newly discovered evidence. The other type of innocence claim—a *Schlup* claim—is one that "does not by itself provide a basis for relief," but is intertwined with constitutional error that renders a person's conviction constitutionally invalid.
>
> Establishing a bare claim of actual innocence is a Herculean task. We have stated that "any person who has once been finally convicted in a fair trial should not be permitted to wage, and we do not permit him to wage, a collateral attack on that conviction without making an exceedingly persuasive case that he is actually innocent." Thus, to succeed in an actual innocence claim the applicant must show "by clear and convincing evidence that, despite the evidence of guilt that supports the conviction, no reasonable

3

juror could have found the applicant guilty in light of the new evidence." This showing must overcome the presumption that the conviction is valid and it must unquestionably establish applicant's innocence.

. . . .

. . . [B]efore a habeas applicant is entitled to a hearing, the applicant must make a claim that, if true, establishes affirmative evidence of his innocence. Then, at the hearing, the trial judge assesses the witnesses' credibility, examines the "newly discovered evidence," and determines whether that "new" evidence, when balanced against the "old" inculpatory evidence, unquestionably establishes the applicant's innocence. The habeas judge then sets out findings of fact and conclusions of law, and he makes a recommendation to this Court. Upon submission to this Court, we review the factual findings with deference because the habeas judge is in the best position to make credibility judgments. Even though deference is the prescribed standard, we are not bound by the habeas judge's findings, conclusions, or recommendations when they are not supported by the record.[2]

## Discussion

On appeal, appellant relies on the court of criminal appeals' opinion in *Ex parte Elizondo*[3] in raising the following argument:

Elizondo was convicted based solely on the testimony of one witness, and when that witness recanted, the Court of Criminal Appeals ordered habeas relief granted. Similarly, Camp was convicted based solely upon the testimony of [J.C.], who thereafter recanted. Elizondo states that the newly discovered evidence should create doubt as to the efficacy of the verdict sufficient to undermine confidence in the verdict, and that it is probable that the verdict would be different on retrial. Appellant submits that this standard was met at his Writ hearing.

Despite [J.C.'s] recantation of her recantation, the newly discovered evidence clearly creates doubt as to the efficacy of the verdict in [appellant's] case. . . . Having now admitted lying during trial, and then later lying to the Judge, [J.C.] has no credibility. . . . It is probable that upon retrial by jury, [appellant] would be found innocent.

---

[2] *Ex parte Brown*, 205 S.W.3d 538, 544-46 (Tex. Crim. App. 2006) (footnotes omitted).

[3] *Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996).

4

The defendant in *Elizondo* was convicted for aggravated sexual assault "based solely upon the testimony of his step-son Robert."[4]  Thirteen years after the conviction, Robert recanted, stating that his "natural father relentlessly manipulated and threatened [him] into making such allegations against [the defendant] in order to retaliate against [his] natural mother, [the natural father's] ex-wife, for marrying [the defendant] years before."[5] In concluding that the defendant was entitled to habeas corpus relief, the court of criminal appeals stated:

> [Robert's] claim is not implausible on its face, and particularly given the complete lack of any other inculpatory evidence in the case, direct or circumstantial, we think that another jury hearing the evidence, including the newly discovered mature recantation of Robert's juvenile testimony, would view the new evidence as the more credible and would acquit applicant.[6]

Assuming, arguendo, that the letter written by J.C. is a recantation of the testimony she provided at appellant's trial for assault, her abandonment of this recantation adds to the number of significant distinctions that can be drawn between this case and *Elizondo*. In *Monse v. State*, this Court stated:

> [T]he general rule is that a new trial should be granted where a witness has testified to material inculpatory facts against the accused and after the verdict, but before the motion for new trial has been acted upon, makes an affidavit that he testified falsely.  There are exceptions to the general rule where, among other things, the recanting witness is an accomplice *or abandons the recantation*, where the recantation is found not to be credible in light of the trial evidence, or where evidence is produced at the new trial

---

[4] *Id.* at 209.

[5] *Id.* at 210.

[6] *Id.*

5

hearing to show that the recantation is incredible or pressured.[7]

Accordingly, just as a trial court may take into account the abandonment of a recantation in deciding whether to grant a new trial based on that recantation, we believe a trial court may similarly consider a recantation's abandonment in deciding whether to grant a writ of habeas corpus.

Furthermore, the court of criminal appeals explained in *Elizondo* that because the victim was recanting, as an adult, testimony that he provided years earlier as a juvenile, a basis existed for the fact-finder to conclude that the recantation was more credible than the previous testimony.[8]  In the instant case, there is no basis for finding J.C.'s alleged recantation more credible, considering that J.C. testified that her letter to the trial court was strictly motivated by a desire to obtain a higher amount of needed child support payments. We thus find that *Elizondo* does not support appellant's contention that the trial court erred in denying his application for writ of habeas corpus.[9]

At the conclusion of J.C.'s testimony at the habeas corpus hearing, the trial judge stated:  "I remember the hearing [on appellant's assault charge]. [The defendant] also testified and I didn't believe his version of the events.  I am denying your Motion for Writ of Habeas Corpus.  This has come up several times.  I remember the hearing.  I didn't

---

[7] *Monse v. State*, 990 S.W.2d 315, 318 (Tex. App.–Corpus Christi 1999, pet. ref'd) (emphasis added and citations omitted).  We also stated the same in *Villarreal v. State*, 788 S.W.2d 672, 673-74 (Tex. App.–Corpus Christi 1990, pet. ref'd).

[8] *Ex parte Elizondo*, 947 S.W.2d at 210.

[9] Though appellant would have us believe that *Elizondo* signifies that an application for writ of habeas corpus must be granted in the face of a victim's recantation, the court of criminal appeals' holding in *Ex parte Brown* clearly disproves this notion.  In that case, the court overturned the trial court's decision to grant habeas relief based on the victim's recantation, which was not abandoned.  *Ex parte Brown*, 205 S.W.3d at 546-49. The court concluded that "the habeas record [did] not show that applicant's evidence . . . unquestionably establishe[d] his innocence."  *Id.* at 549.

believe [the defendant]. I believed [J.C.]." This statement is significant because we must afford almost total deference to a trial judge's determination of the historical facts supported by the record, especially when the fact findings are based on an evaluation of credibility and demeanor. The trial judge was similarly free to make findings based on his evaluations of J.C.'s credibility and demeanor at the habeas corpus hearing.[10]

Regardless of whether the trial judge concluded that J.C.'s letter was not a recantation, or concluded that it was a recantation that deserved little or no weight in light of its subsequent abandonment and other surrounding circumstances, we believe due deference should be given to either conclusion. Accordingly, we conclude that the trial court did not err because the habeas record does not show that appellant's evidence unquestionably establishes his innocence.

**Conclusion**

We affirm the trial court's order.

LINDA REYNA YAÑEZ,
Justice

Do not publish. TEX. R. APP. P. 47.2(b).

Memorandum opinion delivered and
filed this the 22nd day of May, 2008.

---

[10] *See Ex parte Martin*, 6 S.W.3d 524, 526 (Tex. Crim. App. 1999).

7